UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EFRAHIN H.,<br><br>                          Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>                          Defendant. | NO. 1:23-CV-3048-TOR<br><br>ORDER AFFIRMING<br>COMMISSIONER'S DENIAL OF<br>BENEFITS UNDER TITLES II & XVI<br>OF THE SOCIAL SECURITY ACT |

BEFORE THE COURT is Plaintiff's motion for judicial review of Defendant's denial of his applications for disability insurance benefits and supplemental security income ("SSI") benefits (ECF No. 9). The matter was submitted for consideration without oral argument. The Court has reviewed the administrative record and the completed briefing and is fully informed. For the reasons discussed below, the Commissioner's denial of Plaintiff's application for benefits under Title II and Title XVI of the Social Security Act is **AFFIRMED**.

//

## JURISDICTION

The Court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Substantial work activity is "activity that involves doing significant physical or mental activities," even if performed on a part-time basis.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work performed "for pay or profit," or "the kind of work usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At step two, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity" ("RFC") before awarding benefits.  RFC is generally defined as the claimant's ability to perform physical and mental work activities on a sustained basis despite his limitations (20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)), and is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the RFC, the claimant is capable of performing relevant work that he has performed in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the RFC, the claimant is capable of adjusting to other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Work in the national economy "means work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(A). The Commissioner can meet this burden by soliciting the impartial testimony of a vocational expert ("VE").  *White v. Kijakazi*, 44 F.4th 828, 833-34 (9th Cir. 2022).

In making this determination, the Commissioner will consider factors such as the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the Commissioner will find that the claimant is disabled and entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four, and a claimant who meets the first four steps has established a prima facie case of disability and entitlement to benefits. *White*, 44 F.4th at 833 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On July 29, 2020, Plaintiff applied for Title II disability insurance benefits and Title XVI supplemental security income benefits, alleging an onset date of July 20, 2019. Administrative Transcript ("Tr.") ECF No. 6 at 21. Plaintiff generally alleged that he was disabled to a spinal impairment, meniscus tear in his left knee, obesity, depressive disorder, somatic symptom disorder, and other mental

conditions. Tr. 24, 27. The applications were denied on October 28, 2020, and denied again upon reconsideration on April 29, 2021. Tr. 21. By mutual agreement, Administrative Law Judge ("ALJ") conducted a telephonic hearing on November 3, 2021. Tr. 21, 74. The ALJ then denied Plaintiff's claims on January 10, 2022. Tr. 21-33.

Of note, Plaintiff previously unsuccessfully applied for Titles II and XVI benefits based on an alleged lower back injury with an onset date of June 20, 2016. Tr. 92, 190. Following a subsequent hearing, an ALJ determined that Plaintiff was not disabled as defined in the Social Security Act on July 19, 2019. Tr. 190-92. The Appeals Council denied his request for further review, and on June 30, 2021, the District Court for the Eastern District of Washington denied Plaintiff's motion for summary judgment. Tr. 16, 200. However, the ALJ did not treat the prior denial of benefits as creating a presumption of continuing non-disability because Plaintiff's torn left knee meniscus did not occur until after the Commissioner's previous decision became final. Tr. 21-22.

As a threshold issue, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2022. Tr. 24. At step one of the sequential evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 20, 2019, the date of onset. Tr. 24. At step two, the ALJ found that the Plaintiff had the following severe impairments: spinal

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 7

impairment, a meniscus tear of the left knee, and obesity. Tr. 24. At step three, the

ALJ found Plaintiff did not have a physical or mental impairment or combination

of those impairments which met or medically equaled the severity of a listed

impairment. Tr. 25-26. The ALJ further found that Plaintiff had the RFC to

perform light work with the following limitations:

> [H]e [can] stand and/or walk for four out of eight hours; his work must accommodate alternating positions; he can never climb ladders, ropes, or scaffolds; he can occasionally climb stairs; he can occasionally stoop, crouch, kneel, and crawl; he must avoid concentrated exposure to excessive vibrations, hazards, and extreme cold; he can perform simple work related instructions, tasks, and decisions in a predictable work setting; and he will be off-task and unproductive for five percent of the workday.

Tr. 26.

In making this determination, the ALJ found that while some of the

Plaintiff's medically determinable physical impairments could reasonably be

expected to produce his alleged symptoms, certain representations by the Plaintiff

regarding the intensity, persistence, and limiting effects of his symptoms were

inconsistent with the medical evidence and other evidence in the record. Tr. 27-29.

Specifically, he found that the medical files tended to support that the severity and

frequency of Plaintiff's alleged symptoms had subsided with treatment, that his

bodily functions were generally normal, and that his complaints seemed

inconsistent with his generally benign presentation. Tr. 28-29. In so doing, the

ALJ explained that he found the testimony of Plaintiff's medical experts unpersuasive. Tr. 29-31.

At step four, the ALJ found Plaintiff was incapable of performing any past relevant work as an agricultural or produce laborer. Tr. 31; *see also* Tr. 39. However, at step five, the ALJ found that testimony from a vocational expert and other relevant factors, including Plaintiff's age, education, work experience and residual functional capacity, supported that Plaintiff could successfully adjust to other jobs that existed in significant numbers in the national economy. Tr. 31. Based on the fact that Plaintiff had not met steps three and five of the sequential evaluation, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 32.

On February 14, 2023, the Appeals Council denied review, at which point the ALJ's decision became the final decision of the Commissioner. Tr. 6. Plaintiff timely filed this civil action within 60 days of notice of the Appeals Council's order. 20 C.F.R. §§ 404.981, 422.210(c); *see* ECF No. 1.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying his applications for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues on review:

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 9

1.  Whether the ALJ improperly rejected Plaintiff's symptom testimony;

2.  Whether the ALJ improperly disregarded the medical opinion testimony of Plaintiff's experts; and

3.  Whether the ALJ improperly assessed Plaintiff's mental disorders as non-severe.

ECF No. 9 at 2.

## DISCUSSION

**A.    Plaintiff's Symptom Testimony**

Plaintiff contends that the ALJ improperly rejected evidence of his self-reported symptoms under the third step of the sequential evaluation. ECF No. 9 at 4-12. The Court concludes that the ALJ's rejection of Plaintiff's symptom testimony was supported by specific, clear, and convincing evidence.

As the ALJ order described, the Commissioner undertakes a two-step test to determine whether a claimant's subjective symptom testimony can be reasonably accepted as consistent with the objective record evidence. Social Security Ruling ("SSR") 16-3p, 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that her

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 10

impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Even if a plaintiff meets the first prong of the two-step test, the ALJ will only proceed to the second part of the analysis absent evidence of malingering. When affirmative evidence of malingering exists, the ALJ is not required to provide clear and convincing reasons to reject the claimant's testimony. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Instead, the ALJ may reject the claimant's symptom testimony merely upon identifying some evidence of malingering in the record. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *see also Vasquez*, 572 F.3d at 591 (departing from the standard set forth in *Robbins v. Soc. Sec. Admin.* 466, F.3d 880 (9th Cir. 2006), which required an explicit finding of malingering).

Assuming that the claimant meets the first prong and lacking record evidence of malingering, the ALJ will proceed to the second prong of the test. Under the second step, the ALJ will evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the degree to which they limit the claimant's ability to work. *Brown-Hunter v. Colvin*, 806 F.3d 487, 491 (9th Cir. 2015). "[T]he ALJ can only reject the claimant's testimony about the severity of

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 11

the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; instead, the ALJ must identify what symptoms are being discounted and what evidence undermines those claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ must consider all of the record evidence "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2. When evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ should consider the following: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional

1   limitations and restrictions due to pain or other symptoms.  *Id*. at \*7-8; 20 C.F.R.

2   §§ 404.1529(c)(3), 416.929(c)(3).

3       *1.   Evidence of Malingering*

4       At step one, the ALJ found that Plaintiff's impairments could be the

5   reasonable cause of his subjective symptoms, and did not explicitly find that

6   Plaintiff was a malingerer.  *See generally* Tr. 27-29.  However, Defendant argues

7   that the ALJ's reference to the prior ALJ's order denying benefits—which did

8   label Plaintiff as a malingerer—constitutes sufficient evidence of malingering for

9   present purposes.  ECF No. 11 at 3; Tr. 194.  Plaintiff replies that Defendant may

10  not rely upon prior evidence in a different proceeding to support a finding of

11  malingering, particularly because the ALJ never indicated his decision was

12  informed by the outcome of the previous proceedings.  ECF No. 12 at 2.  He

13  further alleges that there is not "an iota of evidence of malingering since onset."

14  *Id.*

15      Whether the ALJ's order can be fairly characterized as having accounted for

16  record evidence of malingering represents a close call.  Although the order did

17  refer to the prior ALJ's determination of non-disability, it also explicitly

18  disclaimed that it was relying on the order due to the subsequent onset of a new

19  severe impairment (i.e., Plaintiff's torn left knee meniscus).  Tr. 21-22.  At the

20  same time, however, the order reads as skeptical of Plaintiff's claims.  For

instance, the ALJ noted that Plaintiff's reports of the "intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record" and further observed that "the severity and frequency of [Plaintiff's] reported symptoms are out of proportion to the longitudinal observations and findings by providers by routine examinations." Tr. 27. While these statements and related findings reasonably suggest that the ALJ believed there was evidence of malingering in the record, they are better considered under step two, which asks whether the alleged severity of Plaintiff's symptoms is consistent with the record evidence. The Court therefore proceeds to consider whether the ALJ's determination of the severity of Plaintiff's symptoms is supported by specific, clear, and convincing evidence.

### 2. *Specific, Clear, and Convincing Evidence*

Under the second prong of the test, the ALJ identified specific, clear, and convincing evidence which supplied an appropriate basis upon which to reject Plaintiff's alleged symptoms.

Plaintiff submits that the ALJ erred in two regards under the second standard. ECF No. 9 at 4-5. First, he urges that the ALJ misfocused on certain portions of medical records which characterized his physical functions as "normal" rather than those which were abnormal, and that the ALJ mischaracterized the severity of the abnormal findings. *Id.* at 5. He argues it was improper for the ALJ

to insist on medical evidence of his subjective pain "by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Id.* at 5 (quoting *Smart v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022)). Additionally, he observes that several of the normal findings which the ALJ focused on have no relation to his knee and lumbar spine disorders, and argues that the findings that were abnormal were severe enough to produce the symptoms he complained of. *Id.* at 6-12.

Second, Plaintiff contends that the ALJ improperly found that he had not obtained any "significant" spinal treatment from May 2017 through March 2021. *Id.* at 11. Since Plaintiff did not allege disability onset until July 2019, the majority of that time is irrelevant to his disability claim. *Id.* Plaintiff initially declined surgery because he was afraid, not because he was not in pain. *Id.* Additionally, the coronavirus pandemic was responsible for much of the lapse in Plaintiff's treatment. *Id.* The ALJ's failure to consider these barriers to treatment as reasonable justifications for why Plaintiff failed to pursue more "significant" lumbar treatment makes his conclusion unsustainable. *Id.* at 11-12; *see also* ECF No. 12 at 3-4.

The crux of Plaintiff's first argument is that the ALJ gave improper weight to evidence which tended to show that he was able-bodied. It is a well-accepted principle of agency review that district courts "may not reweigh the evidence or

substitute [their] judgment for that of the ALJ." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The responsibility of resolving whatever conflicts or ambiguities may exist in the record is reserved to the ALJ. *Id.* The ALJ must offer specific, clear, and convincing reasons for disregarding the claimant's alleged symptoms, taking into account the entire record and a variety of listed factors. SSR 16-3p, 2016 WL 1119029, at *6. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

In this case, the Court cannot say that the ALJ's resolution of Plaintiff's first claim presented ran afoul of any of the abovementioned precepts. The order duly accounted for evidence which cut both ways and made reasonable conclusions therefrom. For instance, the ALJ observed:

> When examined in March 2021, while [Plaintiff] was unable to left heel walk and had pain with active motion in his lumbar spine, he had a normal active pain free range of motion in his cervical spine . . . a

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 16

> normal range of motion in his bilateral knees . . . [and] normal
> strength in his lower extremities . . .
>
> At another examination in March 2021, while he had abnormal left
> knee findings, he did not walk with a limp; he had normal lower
> extremity strength; and he had normal neurovascular findings.
> . . .
>
> While the claimant has some abnormal findings, the often normal or
> near normal findings[,] [including] . . . normal strength and
> neurovascular functioning his lower extremities, do not corroborate
> the severity or frequency of his allegations.

Tr. 28-29.

As the foregoing makes clear, the ALJ accounted for evidence which favored Plaintiff's arguments, as well as evidence which did not.  In view of the fact that the treatment records were sometimes conflicting as to Plaintiff's abilities and pains—for example, noting that he could not heel walk, yet his range of motion and strength was normal—it was not erroneous for the ALJ to find Plaintiff's symptoms were not as severe as he represented in his application for benefits.  The record from at least March 2020 forward indicates that Plaintiff's lower extremity strength was normal.  *See* Tr. 27-29.  The ALJ drew a reasonable conclusion from these internal contradictions.

Relatedly, Plaintiff complains that the ALJ incorrectly relied upon evidence that his other bodily functions and general presentation were normal, even though he never represented that those other functions caused him to be disabled.

1    However, the ALJ did not conclude that Plaintiff was not disabled simply because

2    his other physical characteristics were normal.  Instead, he found that those

3    functions tended to show that Plaintiff was not suffering to the degree he

4    represented:

5        [Plaintiff's] complaints are not wholly consistent [with] his typically
         benign presentation.  For example, while the claimant alleges
6        symptoms to include chronic pain and fatigue, providers routinely
         observe that he is alert and oriented and in no acute distress.
7

8    Tr. 29.

9        As a second matter, Plaintiff argues that the ALJ relied on evidence of his

10   non-treatment seeking behavior prior to the alleged onset of his disability.

11   However, Ninth Circuit case law permits ALJs to consult pre-onset events and

12   symptoms, including a plaintiff's failure to seek reasonably available treatment

13   pre-onset.  *See Robinson v. Soc. Sec. Admin.*, 12 F. App'x 451, 452 (9th Cir. 2001)

14   (ALJ did not err in consulting an assessment undertaken before the alleged onset

15   date); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2009) (ALJ may rely on failure to

16   seek treatment or large gaps in treatment as a basis for an adverse finding).

17       The fact that the ALJ did not credit Plaintiff's assertions when there was

18   specific, clear, and convincing evidence to the contrary does not supply a basis for

19   reversal.  The Court finds that the ALJ appropriately rejected Plaintiff's self-

20   reported symptoms under the third step of the sequential analysis.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 18

**B.    Medical Opinion Evidence**

Plaintiff assigns error to the ALJ's characterization of the medical testimony of PA-C David Richmond, Dr. Brent Packer, and Dr. Nickolas Jones.  ECF No. 9 at 13-20.  The Court finds that the ALJ's evaluation Plaintiff's medical opinion evidence was corroborated by substantial evidence.

Because Plaintiff's alleged onset date was on July 20, 2019, the new regulations for how an ALJ must evaluate medical opinion evidence under Titles II and XVI are controlling.  *See* 20 C.F.R. § 404.1520c (governing medical opinion evidence under Title II); 20 C.F.R. § 416.920c (evaluating medical opinion evidence under Title XVI); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017), *available at* 2017 WL 168819.

Under the new regulations, the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s)."  82 Fed. Reg. 5844-01, 5867–68.  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior

administrative medical finding," including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

The ALJ is required to explain how the two most important factors, supportability and consistency, were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  These factors are defined as follows:

> (1) Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).  However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered.  20

C.F.R. §§ 404.1520c(b)(2) 416.920c(b)(2).

These regulations displace the Ninth Circuit's standard that require an ALJ to provide "specific and legitimate" reasons for rejecting an examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). As a result, the ALJ's decision for discrediting any medical opinion "must simply be supported by substantial evidence." *Id.*

### 1.   *Testimony of PA-C David Richmond*

Plaintiff alleges that the ALJ improperly discredited the testimony of PA-C Richmond, his treatment provider. ECF No. 9 at 13. He asserts that the ALJ failed to include PA-C Richmond's description of Plaintiff's disabling limitations in the RFC despite the fact that the ALJ agreed PA-C Richmond's reports were "persuasive" and that PA-C Richmond had an opportunity to examine Plaintiff. *Id.* He further argues that the ALJ impermissibly failed to explain why he rejected PA-C Richmond's opinion despite its persuasive value, and by failing to address the supportability factor. *Id.* at 14-15.

In analyzing PA-C Richmond's testimony, the ALJ wrote:

> The undersigned finds the opinion of Mr. Richmond persuasive. While Mr. Richmond had an opportunity to examine the claimant and was presumably familiar with the treatment record, his opinion as to the severity and frequency of the claimant's limitations is out of proportion to the longitudinal record to include, for example, the often normal or near normal findings such as . . . an improved or otherwise unremarkable gait, and normal strength and neurovascular functioning in his lower extremities; his lack of significant treatment for his spinal

1
2
3
4

condition from May 2017 through March 2021; and claimant's generally benign presentation . . . support finding that the claimant has greater functioning than opined by Mr. Richmond.  While imaging and physical examinations show spinal and left knee abnormalities with a reduced range of motion, these limitations are accommodated by the residual functional capacity.

5

Tr. 29-30.

6
7
8
9
10
11
12

As Defendant pointed out, the ALJ's reference to PA-C Richmond's opinion as "persuasive" is clearly a typographical error.  ECF No. 11 at 8, n.3.  Plaintiff argues in reply that the Court may not view the typo as such because it "attempts to intuit the ALJ's mind" and is inconsistent with other observations by the ALJ that seem to credit PA-C Richmond's analysis (namely, the fact that he had an opportunity to examine Plaintiff and was familiar with the treatment record).  ECF No. 12 at 6-7.

13
14
15
16
17
18
19
20

This argument is not well-taken.  The context of the paragraph itself and the larger analysis make plain that the ALJ's ultimate conclusion was that PA-C Richmond's examination was *not* persuasive.  The fact that the ALJ observed that some elements of PA-C Richmond's evidence—like his ability to examine Plaintiff and familiarity with the treatment record—tended to be a credit to Plaintiff's arguments is undercut by the negative observations in the following dependent clause.  The Court therefore does not give credence to Plaintiff's claim that the ALJ found PA-C Richmond convincing.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 22

1    More persuasively, Plaintiff argues that the ALJ erroneously failed to

2    explain why he found PA-C Richmond's opinion unsupportable.  Although the

3    Court's task would be made easier had the ALJ explicitly used the word

4    "unsupportable" in its analysis and ALJs should endeavor to do so going forward,

5    that does not undermine the conclusion that the ALJ did in fact find the testimony

6    unsupported.  *See* Woods, 32 F.4th at 793, n.4.  The ALJ discussed that PA-C

7    Richmond's testimony contradicted other findings in the record that showed that,

8    on the whole, Plaintiff was able to function normally.  Tr. 29-30.  Where an ALJ

9    determines that the observations of one medical expert are inconsistent with the

10   record as a whole, courts in the Ninth Circuit, including this Court, have found the

11   supportability element was adequately considered.  *See, e.g.*, *Woods*, 32 F. 4th at

12   793, n.4 (finding the "supportability" element met by an inconsistency finding);

13   *Santiago A. v. Kijakazi*, No. 1:22-CV-3041-TOR, 2022 WL 18110058 at *6 (E.D.

14   Wash. Sep. 28, 2022) (discussing inconsistency in the context of supportability).

15   Accordingly, the ALJ's determination that PA-C Richmond's evidence was

16   inconsistent with the record evidence as a whole counted as sufficient

17   consideration of the supportability factor.[1]

18

---

19        [1] Plaintiff also argues that the ALJ's evaluation of the consistency factor in

20   the context of PA-C Richmond's testimony was erroneous because it referenced

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 23

2. *Testimony of Dr. Brent Packer*

Plaintiff also argues that the testimony of Dr. Packer, a consultant who evaluated his case, was unreasonably discounted by the ALJ because he too failed to discuss explicitly the supportability factor. ECF No. 12 at 8. As with PA-C Richmond, however, the ALJ found that Dr. Packer's testimony was inconsistent with the longitudinal record as a whole. Tr. 30 (finding Dr. Packer's opinion "out of proportion to the longitudinal record"). Additionally, the ALJ noted that Dr. Packer did not examine Plaintiff or review the updated record. Tr. 30. Accordingly, Dr. Packer's testimony was appropriately found unsupportable.

Relatedly, Plaintiff argues that Dr. Packer's failure to review the updated record and to examine Plaintiff were not appropriate reasons for the ALJ to reject his claims because the evidence from the State agency physical consultants suffered from the same defects. ECF No. 9 at 17. However, the ALJ noted that the State consultants' opinions were consistent with the longitudinal record. Tr. 29. Therefore, it was not error for the ALJ to credit the State consultants.

_____

his "benign" presentation and failure to seek lumbar spinal treatment between 2017-2021, which he believes was improper. The Court addressed why those findings were appropriate in Part A. and will not resurrect the same contentions in this context.

Second, Plaintiff argues that the ALJ impermissibly relied on evidence of his "generally benign" presentation and failure to seek lumbar spinal treatment between 2017-2021 as a basis for finding Dr. Packer's claims inconsistent under the second most important factor. ECF No. 11 at 9-10. The Court already addressed why those findings were apt in Part A. *See also supra* at 23, n.1.

### 3.    Testimony of Dr. Nickolas Jones

Plaintiff contends that the ALJ erred by not crediting the report of Dr. Jones, a consultant who opined that Plaintiff would struggle to maintain employment due to difficulties interacting with his colleagues and chronic absenteeism. Plaintiff's arguments regarding the ALJ's assessment of Dr. Jones's report mirrors his above contentions (namely, that supportability was left unaddressed, that the ALJ unfairly credited the State consultant's reports, and that the evidence of his benign presentation and failure to seek spinal treatment was improper). Having already rejected those arguments, the Court declines to revisit them again here.

## C.    Assessment of Plaintiff's Mental Disorders

As a final matter, Plaintiff argues that the ALJ erred by failing to assess his mental impairments as severe. According to Plaintiff, any finding that the impairment would have any non-minimal limiting effect on his work activity should have resulted in a severe finding. ECF No. 9 at 20. He describes that the ALJ found his depressive and somatic symptom disorders were non-severe but also

included in the RFC that those same disorders limited Plaintiff's employment

opportunities to jobs that included simple work-related instructions, tasks, and

decisions. *Id.* at 21. Plaintiff argues this error was not harmless despite its

inclusion in the RFC because the ALJ drew upon the conclusion that his mental

disorders were non-severe in discounting Dr. Jones's report. *Id.*

At step two of the sequential process, the ALJ must determine whether

claimant suffers from a "severe" impairment. 20 C.F.R. §§ 404.1520(c),

416.920(c). 20 C.F.R. § 404.1522 describes a non-severe impairment as one which

does not interfere with a person's ability to execute basic work activities:

> What we mean by an impairment(s) that is not severe.
>> (a) Non-severe impairment(s). An impairment is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
>> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—
>> . . .
>>> (3) Understanding, carrying out, and remembering simple instructions;
>>> (4) Use of judgment;
>>> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>>> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522.

Additionally, in evaluating a claimant's mental impairments, an ALJ follows

a special two-step psychiatric review technique. 20 C.F.R. §§ 404.1520a,

416.920a.  First, the ALJ must determine whether there is a medically determinable

impairment.  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  If the ALJ determines

an impairment exists, the ALJ must rate the degree of functional limitation

resulting from the impairment in the following four broad functional categories: (1)

understand, remember, or apply information; (2) interact with others; (3)

concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R.

§§ 404.1520a(c)(3), 416.920a(c)(3).  If the ALJ rates the degree of limitation as

"none" or "mild," the ALJ will generally conclude the impairment is not severe.

20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  As to the first step, the impairment

must be shown by objective medical evidence such as medically acceptable clinical

or laboratory diagnostic techniques; a claimant's statement regarding symptoms, a

diagnosis, or medical opinion is insufficient to establish the existence of an

impairment.  20 C.F.R. §§ 404.1521, 416.921.

Step two is "a de minimus screening device [used] to dispose of groundless

claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying

our normal standard of review to the requirements of step two, [the Court] must

determine whether the ALJ had substantial evidence to find that the medical

evidence clearly established that [Plaintiff] did not have a medically severe

impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687

(9th Cir. 2005).

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 27

Plaintiff's contentions are based on a misapprehension of the applicable regulations and case law.  The ALJ in Plaintiff's case fully accounted for the four functional categories and concluded from those factors that Plaintiff was not under a severe mental disability, but instead under "no more than a 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." Tr. 25.  Plaintiff does not challenge that analysis, but instead appears to argue that the ALJ effectively found his mental disorders severe by incorporating those limitations into the RFC.  ECF No. 9 at 20-21.  Plaintiff offers no legal authority to support the assertion that accounting for a claimant's mild limitations in the RFC converts a minimal limitation into a severe disability.  *Id.*  To the contrary, non-severe medically determinable impairments *must* be included in the RFC along with the severe ones.  20 C.F.R. §§ 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."); 404.1545(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.").  Accordingly, it was not inconsistent for the ALJ to include Plaintiff's mental limitations in the RFC but also to characterize those limitations

as non-severe, and neither was it error to rely upon that finding of non-severity in rejecting Dr. Jones's reports.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes that the ALJ's decision is supported by substantial evidence and free from harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Opening Brief (ECF No. 9) is **DENIED**.

2. Defendant's Response Brief (ECF No. 11) is **GRANTED**.  The final decision of the Commissioner is **AFFIRMED**.

The District Court Executive is directed to enter this Order, enter judgment, furnish copies to counsel, and **CLOSE** the file.

DATED September 12, 2023.



THOMAS O. RICE
United States District Judge

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 29